NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LUISA NAVARRO,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2025-1612

---

Petition for review of the Merit Systems Protection Board in No. NY-0845-23-0074-I-1.

---

Decided:  December 8, 2025

---

LUISA NAVARRO, Carolina, Puerto Rico, pro se.

BLAKE W. COWMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent.  Also represented by TARA K. HOGAN, PATRICIA M. MCCARTHY, BRETT A. SCHUMATE.

---

Before LOURIE, PROST, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Luisa Navarro petitions for review of a final decision of the Merit Systems Protection Board ("the Board"), which denied her petition for review and upheld the United States Office of Personnel Management's ("OPM's") findings regarding its entitlement to collect an overpayment of Navarro's Federal Employees' Retirement System ("FERS") disability retirement annuity benefits. *See* S.A. at 18–24 ("*Final Decision*"); S.A. at 1–17 ("*Initial Decision*").[1]  For the following reasons, we *affirm*.

## BACKGROUND

In June 2019, Navarro applied for retirement under FERS. *Initial Decision*, S.A. at 2.  In January 2020, OPM informed her via letter that her retirement had been approved and converted to a disability retirement.  *Id.* OPM also informed her that it could not start making annuity payments until it received confirmation that she had applied for Social Security Administration ("SSA") disability insurance benefits, and that she must notify OPM of any future amount and effective date of any SSA disability insurance benefits award.  *Id.*  The letter specifically stated that she could notify OPM of any benefits by "sending [OPM] a photocopy of [the SSA disability insurance] award notice or [the SSA's] statement showing the monthly benefit amount and the effective date they determined [her] eligibility began."  S.A. at 31.

In April 2022, Navarro was approved for SSA disability benefits with an entitlement date of November 1, 2019. *Id.* at 2; *see* S.A. at 36, 47.  Navarro testified that, about a week later, she called OPM and spoke with someone by the name of "Anna S." *Initial Decision*, S.A. at 2.  Navarro explained that she told Anna S. about the SSA award and asked what steps she needed to take to avoid being overpaid, as she had

---

[1]  S.A. refers to the Supplemental Appendix filed with the Informal Response Brief.

previously been overpaid. *Id.* According to Navarro, she also asked Anna S. to take a close look at her file. *Id.* at 3.

In August 2022, after learning of Navarro's entitlement to Social Security benefits, OPM sent Navarro a letter advising her that it was required to reduce her FERS annuity by the amount she was entitled to from the SSA. *Initial Decision*, S.A. at 3 (citing S.A. 36). As a result, it reduced her monthly FERS disability annuity amount moving forward and explained that it would also begin collecting its overpayment for the period beginning in November 2019 running through July 2022. *Id.* OPM's overpayment amount totaled $40,749 for that period, and OPM explained that it would recover that amount in monthly installments deducted from her FERS annuity. *Id.* (citing S.A. at 38).

Navarro sought reconsideration of OPM's decision, arguing that OPM mismanaged her retirement income and that she was misinformed by her conversation with Anna S. S.A. at 43. But in February 2023, OPM affirmed its initial decision that Navarro was overpaid FERS annuity benefits. *Initial Decision*, S.A. at 3. OPM explained that it did not adjust Navarro's annuity until August 2022 "after a SSA match," *i.e.*, an automated cross-check against SSA data, which resulted in the overpayment. *Id.*

Navarro appealed OPM's decision to the Board. *Id.* An administrative judge ("AJ") affirmed OPM's decision. *Id.* at 9. In doing so, the AJ determined that (1) OPM proved the existence and amount of the overpayment; (2) Navarro failed to prove entitlement to a waiver of the overpayment because she knew of and was obligated to set aside the overpayment; and (3) Navarro did not show recovery was against equity and good conscience because the circumstances were not egregious. *Id.* at 4–7. The full Board denied Navarro's petition for review and affirmed the AJ's decision, adopting the initial decision as its final decision. *Final Decision*, S.A. at 19.

Navarro appeals.  We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We may only set aside an action of the Board if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *McIntosh v. Dep't of Def.*, 53 F.4th 630, 638 (Fed. Cir. 2022) (citation omitted).  Moreover, "[w]e review the Board's legal decisions de novo and its findings of fact for substantial evidence." *Id.*  In doing so, we construe Navarro's papers liberally, as she is a pro se litigant.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

A FERS disability annuity must be reduced by the amount of any Social Security disability benefits a FERS retiree receives.  5 U.S.C. § 8452(a)(2); 5 C.F.R. §§ 844.302(b)(2), (c)(2).  OPM is required to prove, by a preponderance of the evidence, the existence and amount of a FERS disability annuity overpayment.  5 C.F.R. § 845.307(a).  Navarro appears to dispute only that she was entitled to a waiver of the overpayment, not the overpayment itself.  *See* Navarro Op. Br. at 4.  Accordingly, we review only the Board's determination on waiver.

Repayment of FERS overpayments may be waived when, in OPM's judgment, the individual "is without fault and recovery would be against equity and good conscience." 5 U.S.C. § 8470(b); *see also* 5 C.F.R. § 845.301 et seq; Ret. & Ins. Serv., U.S. Off. Pers. Mgmt.*, Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and the Federal Employees' Retirement System* (1995) ("Policy Guidelines").[2]  The AJ found that

---

[2] OPM's published policy guidelines interpreting its regulations regarding its Civil Service and Federal Employee's Retirement Systems.

Navarro did not meet this standard, applying the "Set-Aside Rule" from the Policy Guidelines. S.A. at 5–6. "Under the Set-Aside Rule, if [an] individual suspected or knew that he or she had received an overpayment (and therefore had an obligation to set aside the overpaid funds), the individual is not eligible for a waiver under the 'equity and good conscience' standard and would be entitled to relief only under the more exacting 'exceptional circumstances' standard." *Boyd v. Off. of Pers. Mgmt.*, 851 F.3d 1309, 1313–14 (Fed. Cir. 2017).

The Board's affirmance of the AJ's waiver finding under the Set-Aside Rule was supported by substantial evidence. The record indicates that Navarro was notified of her obligation to set aside any money received from SSA that would constitute a duplicate disability payment. *Initial Decision*, S.A. at 5. Specifically, Navarro was informed by letter that because "FERS disability benefits usually begin before the claim for [SSA] benefits is fully processed," "[SSA] checks will be needed to pay OPM for the reduction which should have been made in the FERS annuity." S.A. at 32. Furthermore, Navarro's phone call with OPM's Anna S. shows that she, at a minimum, suspected she was receiving overpayments from OPM. *Initial Decision*, S.A. at 6 (indicating Navarro testified that she called OPM because she wanted to avoid another overpayment issue).

The AJ's next finding, that there were no exceptional circumstances to justify waiver, was also supported by substantial evidence. *See id.* at 7. Exceptional circumstances "involve extremely egregious errors or delays by OPM." Policy Guidelines § C.4; *see also* S.A. at 72. The AJ found that OPM's notification of overpayment to Navarro within four months of her receiving SSA benefits was not so egregious as to warrant waiver. *Initial Decision*, S.A. at 7. Indeed, the record indicates that Navarro never provided a copy of her SSA award to OPM,

*id.*, as she was told she was required to in a letter she received.  S.A. at 32.

Navarro's arguments do not persuade us otherwise. She argues that the AJ erred in not allowing the record of the phone conversation between Navarro and Anna S. to enter the record.  Navarro Op. Br. at 2–3, 8.  But the AJ did not abuse her discretion in excluding this testimony because she credited Navarro's account of the conversation in making her conclusions—there was thus no need for the testimony of Anna S.  *See Higgins v. Dep't of Veterans Affs.*, 955 F.3d 1347, 1357 (Fed. Cir. 2020) (finding no abuse of discretion where the AJ excluded a duplicative witness); *see also* S.A. at 57–58 (excluding testimony of Anna S. as irrelevant because Navarro could testify as to the telephone conversation).

## CONCLUSION

We have considered the remaining of Navarro's arguments and find them unavailing.  For the foregoing reasons, we *affirm* the Board's denial of Navarro's petition for review and affirmance of the AJ's decision.

## AFFIRMED

### COSTS

No costs.